## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

HARMON D. YALARTAI, as Personal   )
Representative of THE ESTATE OF    )
GABRIEL YALARTAI,                  )
                                   )
      Plaintiff,                   )
                                   )
vs.                                )     Case No.     CIV-23-1181-HE
                                   )
THE OKLAHOMA COUNTY                )
CRIMINAL JUSTICE AUTHORITY,        )
et al.                             )
                                   )
      Defendants.                  )

## MOTION TO DISMISS BY DEFENDANT
## OKLAHOMA COUNTY CRIMINAL JUSTICE AUTHORITY

On December 26, 2021, Gabriel Yalartai ("Gabriel" or "Decedent") was incarcerated at the Oklahoma County Detention Center ("OCDC") awaiting trial on charges of Robbery in the First Degree when he tragically took his own life. [Doc. 1 at ¶ 5]; s*ee also* Oklahoma County District Court Case No.: CF-2020-2539[1].  Suicide is always a tragic event; however, a suicide at the jail, while tragic, does not create strict liability on the municipality.

### FACTUAL BACKGROUND

On June 2, 2020, Oklahoma City Police responded to a call for assistance by an off-duty Detective who witnessed a fight in progress. *See* the Information filed in Oklahoma County District Court Case No.: CF-2020-2539. Officers arrived on the scene and broke

---

[1] It is procedurally appropriate to take judicial notice of court documents. *Gee v. Pacheco*, 627 F2d 1178, 1191 (10th Cir. 2010).

up a fight between Gabriel and two other individuals who intervened when Gabriel attempted to steal a woman's car while she was filling it with gasoline. *Id.* at p. 3.  While Gabriel had no felony record in Oklahoma, it was his third arrest in three days, with the previous arrest involving an Assault and Battery on a Police Officer.  *Id.*  During his incarceration, Gabriel was found to be incompetent to stand trial, and the state court ordered Gabriel to be transferred to the Oklahoma Forensic Center in Vinita for treatment. [Doc. 1, at ¶ 43]; *see also* August 27, 2020 Order, attached as Exhibit 1.  On March 12, 2021, the court entered an order to resume the criminal proceedings. *See* Exhibit 2- Order dated March 12, 2021.  A preliminary hearing was held on May 13, 2021, and Gabriel was scheduled to enter a blind plea on June 30, 2021.  *See*  Docket Sheet for CF-2020-2539. However, because Gabriel appeared unable to understand the nature and consequences of the plea, his attorney filed a second application for a hearing to determine his competency to stand trial, and on August 20, 2021, the state court once again ordered Gabriel to be transferred to the Oklahoma Forensic Center in Vinita for treatment.  *Id.*  A competency review hearing was set for December 27, 2021, but unfortunately, Gabriel took his own life on December 26, 2021. *Id.*

On December 25, 2023, Plaintiff Harmon D. Yalartai, who is Gabriel's brother and the Personal Representative of his estate ("Plaintiff" or "the Estate"), filed this lawsuit against *inter alia,* Defendant Oklahoma County Criminal Justice Authority ("OCCJA") for failing to prevent Gabriel's suicide. [Doc. No. 1, at ¶¶ 19, 23, 40-49].

Defendant OCCJA denies that Plaintiff is entitled to any relief and asserts that the allegations fail to establish a constitutional violation.  Further, Plaintiff has offered nothing

more than generalized legal conclusions devoid of sufficient factual allegations to plausibly claim the existence of a custom or policy of the OCCJA that contributed to any alleged violation of the decedent's constitutional rights.  As such, Defendant OCCJA is entitled to dismissal of Plaintiff's Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure.

## ARGUMENTS AND AUTHORITIES

### I.     LEGAL STANDARDS.

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 680. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## II.     THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE A VIOLATION OF GABRIEL'S CONSTITUTIONAL RIGHT.

Plaintiff seeks to hold OCCJA liable under *Monell* for failing to prevent Gabriel's suicide. In the Tenth Circuit, "claims based on a jail suicide are considered and treated as claims based on the failure of the jail officials to provide necessary medical care for those in their custody." *Estate of Burgaz v. Bd of Cty Comm'rs for Jefferson Cty Colo.,* 30 F.4th 1181, 1186 (10th Cir. 2022).   Stated another way, suicide claims are evaluated for deliberate indifference to serious a medical need. *Id.*

The deliberate indifference standard has two components, each of which a plaintiff must establish: (1) an objective requirement that the pain or deprivation be sufficiently serious; and (2) a subjective requirement that the offending official acted with a sufficiently culpable state of mind.  *Id.* citing *Mata v. Saiz,* 427 F.3rd 745, 751 (10th Cir. 2005).

In the Tenth Circuit, suicide cases satisfy the objective component of a deliberate indifference claim. *See Heidel v.* Mazzola, 2021 WL 1103507 *2 (10th Cir. March 23, 2021); *Gaston v. Ploeger,*   229 Fed. Appx. 702, 210 (10th Cir. April 12, 2007) (unpublished).  Therefore, Defendant OCCJA does not challenge the sufficiency of the Complaint on the objective component.

### A.     THE COMPLAINT IS DEVOID OF FACTUAL ALLEGATIONS NECESSARY TO ESTABLISH THE SUBJECTIVE COMPONENT.

The subjective prong requires an official to know of and disregard an excessive risk to a detainee's health or safety. *Estate of Burgaz,* 30 F.4th at 1186 citing *Redmond*, 882 F.3d 927, 939–40 (10th Cir. 2018) "[T]he official must both be *aware* of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

*draw the inference.*" *Id.* at 936 n.3 (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)) (emphases added).

Importantly, an official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not a constitutional violation. *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). But even if a jail official has knowledge of a substantial risk of serious harm to detainees, "he is not deliberately indifferent to that risk unless he is aware of and fails to take reasonable steps to alleviate that risk." *Id.*

Here, the Estate's allegations do nothing to satisfy the subjective component of deliberate indifference to the decedent's medical needs.

First, nowhere in the Complaint are there any facts alleged identifying a mental health condition or diagnosis. Likewise, there are no facts alleged that Gabriel expressed suicidal thoughts or demonstrated suicidal behavior. Simply put, there are no facts alleged that would permit an inference to be drawn that Gabriel posed a substantial suicidal risk. To the contrary, the only hint that Gabriel even suffered from some mental illness is the fact he committed suicide.

Second, but even more significant to the deliberate indifference analysis, is the clear lack of facts suggesting that anyone at the OCDC knew that Gabriel suffered from a serious mental illness or that he was at a substantial risk for suicide. In fact, the Estate affirmatively avers that OCCJA had established policies and procedures requiring thirty-minute sight checks for all inmates assigned to "mental health status," that Investigator Daniel Lazar, who was a criminal investigator employed by Defendant OCCJA, investigated the suicide

and found that Kight's conduct violated these policies, and therefore, Investigator Lazar referred the matter for criminal prosecution. Kight was charged by Information and ultimately pleaded guilty to two felonies of forging official documentations and intentionally failing to make required inmate welfare checks. [Doc. No. 1, at ¶¶28, 29, 32-34]. These allegations undermine any claim of a constitutional violation.

Notwithstanding the clear criminal conduct and Investigator Lazar's action of referring the charges to the Oklahoma County District Attorney's Office for criminal prosecution, the Estate contends Defendant Kight's conduct is part of a known pattern and practice at the OCDC. [Doc. No. 1, at ¶ 35]. In support he sites to a stale DOJ report from 2008 (11 years before the OCCJA was created and 12 years before it took over jail operations), a NIC Report, and the Oklahoma Department of Health Report finding missed and undocumented sight checks. [Doc. 1, at ¶¶ 14-18, and 36-38]. Of course, there are no facts linking the criminal conduct of a rogue detention officer to a pattern and practice of deliberate indifference to a risk of suicide. As the Tenth Circuit held in *Burgaz,* asserting a plausible *Monell* claim requires the Estate to "allege facts showing: (1) an official policy or custom; (2) causation; and (3) deliberate indifference." *Estate of Burgaz,* 30 F.4th at 1189. In the case of a failure to train or failure to supervise claim, the Estate must show a constitutional violation committed by the individual detention officer. *Id.*

Here, the facts alleged surrounding the criminal conduct of former detention officer, Jesse Kight, who failed to conduct any sight checks during his 6:00 p.m. to 6:00 a.m. shift on December 25, 2021, and falsified the logbook to reflect that sight checks were done, are insufficient to establish a constitutional violation because there is nothing alleged

to support a reasonable inference that Defendant Kight was subjectively aware that Gabriel had a serious mental illness or that he was subjectively aware that Gabriel had a substantial risk of suicide. [Doc No. 1, at ¶¶ 24-34].  Indeed, as the Tenth Circuit noted in *Burgaz*, an officer's "failure to alleviate a significant risk of which ***he was unaware, no matter how obvious the risk or how gross his negligent in failing to perceive***, ***is not a constitutional violation***." *Estate of Burgaz,* 30 F.4th at 1186. (Emphasis added).

Third, the mere fact that an Oklahoma District Court Judge in Gabriel's criminal case issued an order and found that on August 27, 2020, sixteen months before the suicide, that Gabriel was not competent to stand trial offers nothing to support a reasonable inference of knowledge of a mental illness or knowledge of a substantial risk for suicide. [Doc. 1, at ¶ 43].  *See Cooper v. Okla.,* 517 U.S. 348, 368 (1996) (recognizing that the standards involved in an involuntary civil commitment proceeding and the competency to stand trial address entirely different substantive issues).  Comparing the due process requirements involved in civil commitments to the competency to stand trial, the Supreme Court reasoned that an involuntary civil commitment proceeding requires the state to show at a minimum "that the person is mentally ill and either poses a danger to himself or others or is incapable of 'surviving safely in freedom.'" *Id.*  However, "[t]he test for competence to stand trial, by contrast, is whether the defendant has the present ability to understand the charges against him and communicate effectively with defense counsel.  *Id.*

Putting aside the completely different standard involved in proceedings addressing competency to stand trial, the Order in Gabriel's criminal case does not impute knowledge of either a serious medical condition or a substantial risk of suicide, nor does it create an

inference anyone at the OCDC was alerted that Gabriel was suicidal, especially when the order fails to even mention suicide. *See Estate of Simon v. Van Beek,* 2023 WL 8544800 * 2 (10th Cir. December 11, 2023) (unpublished) (reversing the denial of a motion to dismiss based upon qualified immunity in a jail suicide).

In *Simon,* which was decided a few weeks before Plaintiff filed this lawsuit, the estate asserted *inter alia,* claims against two sheriff deputies who arrested Simon and three jail supervisors—specifically, the sheriff, the undersheriff, and a captain. *Id.* at *1. With respect to the claims against the jail supervisors, the Tenth Circuit held that the estate failed to allege a constitutional violation because the complaint "did not sufficiently allege that any of the supervisors had actual knowledge of Mr. Simon's risk of suicide that is required for supervisory liability under a § 1983 jail-suicide claim. *Id.* at *5. The Court criticized the district court for inferring knowledge of the inmate's risk of suicide from an allegation that the state court judge referred Mr. Simon for a mental health assessment and that the mental health assessment was emailed to the jail. *Id.* at *6. The Court pointed to the absence of facts showing that any of the supervisors monitored the email account where the assessment was sent or that the jail officials were informed about the email. *Id.*

Further, the Court noted that the referral for a mental health assessment did not mention suicide, nor did the estate allege facts that it did. *Id.* Relying on *Cox v. Glanz*, 800 F.3d 1231, 1249 (10th Cir. 2015), the Court noted that a defendant who was informed that a patient had paranoid schizophrenia did not equate to knowledge that the individual presented a substantial risk of suicide. *Id.* Ultimately, the Court held that the estate failed

to allege a constitutional violation against the supervisory defendants, and therefore, they were entitled to qualified immunity. *Id.*

The pleading deficiencies in the case at bar are even more significant than those in *Simon.* Indeed, there are no facts alleged to support a reasonable inference of deliberate indifference to a known risk of suicide. In truth, the Complaint reveals nothing more than a liability theory predicated on *res ipsa loquitur* and *respondeat superior,* which cannot support municipal liability under § 1983.

## III. PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM FOR MUNICIPAL LIABILITY BASED UPON EITHER A THEORY OF CUSTOM OR POLICY THAT CONTRIBUTED TO A VIOLATION OF DECEDENT'S CONSTITUTIONAL RIGHTS OR A SYSTEMATIC FAILURE.

The Tenth Circuit has held that municipal liability for the violation of a person's constitutional rights may be established in one of two ways. First, a plaintiff may demonstrate that an individual person's acts or omissions caused a violation of their constitutional rights and, further, that a municipal custom or policy was the moving force behind the constitutional violation. In the alternative, a plaintiff may seek to establish deliberate indifference through systematic failures that operate together to deny access to medical care.

Regardless of the theory underlying Plaintiff's claim against the OCCJA, there is, of course, the predicate that there be an actual constitutional violation that occurred. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995). However, as discussed in the preceding section, the Complaint fails to demonstrate that the decedent was denied his constitutional right to adequate medical care. For this reason alone, the analysis is at

an end and the claim for municipal liability must fail.  Nevertheless, assuming for the purpose of argument alone, Plaintiff could state a plausible claim for denial of medical care, Plaintiff's allegations fail to cross the line from speculative to plausible, despite the theory upon which his claim for municipal liability is advanced.

## A.   PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM THAT A CUSTOM OR POLICY WAS THE MOVING FORCE BEHIND A CONSTITUTIONAL VIOLATION.

While an action under Section 1983 may be brought against a municipal body or other local government entity, recovery is limited to acts that are officially sanctioned by such an entity; it is for this reason that a plaintiff must demonstrate that the entity's "policy or custom" caused the constitutional tort.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986).  "Put another way, for a local government unit such as the Board to be liable for violating § 1983, that unit's allegedly unconstitutional act (or the act of the defendant in his or her official capacity) must execute 'a government's policy or custom.'"  *Jantzen*, 188 F.3d at 1259 (quoting *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)).

To establish the existence of a "custom," a plaintiff must demonstrate: (1) a continuing, widespread, and persistent pattern of misconduct; (2) deliberate indifference or tacit approval of misconduct by policy-making officials; and (3) injury to the plaintiff as a result of the custom.  *Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cnty.*, 996 F.2d 1035, 1041 (10th Cir. 1993).  Typically, a plaintiff must demonstrate that similarly situated persons were subjected to the same improper treatment.  *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008); *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995).  Municipal liability may also be imposed if the action is taken pursuant to a "policy"

provided the plaintiff demonstrates: (1) a policy adopted by the municipality or officials responsible under the law for making policy in the area; or (2) a decision made by an official with final policy-making OCCJA within the area. *Pembaur*, 475 U.S. at 480-81; *Randle*, 69 F.3d at 447-48. Action pursuant to a "policy" may also be predicated on "the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom OCCJA was delegated subject to these policymakers' review and approval." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1189 (10th Cir. 2010).

Absent a claim of systemic failure, a plaintiff must ordinarily make two showings in order to impose municipal liability. The plaintiff must first show that an employee of the governmental entity caused the violation of a constitutional right through their acts or omissions. *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1144 (10th Cir. 2023); *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1190-91 (10th Cir. 2020). The plaintiff must then go further and establish that the unconstitutional conduct of the employee was attributable to a custom or policy of the governmental entity. *Id.* The requirement that a plaintiff demonstrate the existence of a custom or policy is "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479 (emphasis in original). Concomitantly, a government body is not liable under Section 1983 for the acts of an employee under a theory of *respondeat superior*. *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978).

Here, Plaintiff's Complaint fails to meet the first element of his claim – that an employee of the OCCJA caused a violation of the decedent's right to adequate medical care, especially, when the Complaint lacks the necessary factual information to support actual knowledge of a suicide risk.

In addition to lacking anything more than a speculative basis to conclude that an OCCJA employee violated the decedent's constitutional rights, Plaintiff's Complaint does not contain a single factual averment that any such constitutional violation was attributable to an official custom or policy of the OCCJA.  Plaintiff acknowledges that the OCCJA did not assume operational control of the detention center until June 1, 2020.  [Doc. 1 at ¶ 19] Thus, Plaintiff's attempt to rely upon incidents and administrative investigations occurring long before the OCCJA came into existence is nothing more than an effort to conceal the sparsity of his factual allegations to support the existence of a custom or policy of the OCCJA.  To be sure, the OCCJA cannot be held responsible for any unconstitutional custom or policy in place prior to its operation, as it maligns the very principles justifying municipal liability articulated in *Pembaur* and which require the focus to be on the culpable actions of the body being sued.  *Pembaur*, 475 U.S. at 479.  In fact, Plaintiff fails to allege even one incident which another inmate was denied adequate medical care and committed suicide or that a suicide occurred because of a missed sight check.

In what almost appears to be an afterthought, Plaintiff generally avers that the alleged violation of decedent's constitutional right to adequate medical care is attributable to a custom of understaffing, failure to train and failure to supervise employees. Conclusory legal assertions such as these may not be accepted as true and are wholly

insufficient to raise Plaintiff's right to relief above a speculative level.  *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (stating "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Plaintiff fares no better with the allegation that Defendant failed to adequately train or supervise employees.  While failure to properly train and supervise employees may serve as the basis for Section 1983 liability, it may do so only in limited circumstances; in such instances, a plaintiff must show that the municipal action was taken with deliberate indifference as to its known or obvious consequences.  *Canton v. Harris*, 489 U.S. 378, 387-88 (1989); *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997).

 Here too, Plaintiff fails to identify what specific training or supervision practices were deficient and/or how the failure to provide adequate employment practices contributed to a violation of decedent's rights.  Having failed to plausibly plead the existence of any custom or policy of the OCCJA that contributed to a violation of decedent's right to adequate medical care, Plaintiff's Complaint against Defendant OCCJA must be dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

WHEREFORE, the Defendant Oklahoma County Criminal Justice Authority respectfully prays that this Honorable Court grant Defendant's Motion to Dismiss in all respects.

Respectfully submitted,

BY:   s/Carri A. Remillard
Carri A. Remillard, OBA #21539
ASSISTANT DISTRICT ATTORNEY
211 N. Robinson, Suite 700 N
Oklahoma City, OK 73102
Phone: (405) 713-1600
Fax: (405) 713-1749
carri.remillard@oklahomacounty.org

*Attorney for the Oklahoma County Criminal
Justice Authority*

## CERTIFICATE OF MAILING

This is to certify that a true and correct copy of the above and foregoing document was served on the following person, who is a registered participant of the ECF case filing system:

Nick Labry
Larby & Associates
-and-
T. Luke Abel
Abel Law Firm
*Attorneys for Plaintiff*

s/Carri A. Remillard